DAVIS ET AL. *v.* AVNET ET AL.

[No. 119, October Term, 1948.]

*Decided March 30, 1949.*

Submitted on briefs before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Aaron A. Baer, Special Assistant Attorney General,* on brief, for Russell S. Davis et al., constituting Maryland Employment Security Board, appellants.

*I. Duke Avnet* and *Isidor Roman, in propria persona,* and *Edgar Paul Boyko* on brief, for I. Duke Avnet and Isidor Roman, appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer to the bill of complaint.

The bill alleges that: Some 500 employees of American Smelting and Refining Company filed with defendants, the Maryland Employment Security Board (then the Unemployment Compensation Board), claims for unemployment compensation. A number of claims were allowed by the Board. The decision of the Board was

reversed on appeal. The order of the court was reversed in part by this court. *Tucker v. American Smelting and Refining Company,* 189 Md. 250, 55 A. 2d 692. Plaintiffs (and another) were employed as counsel by claimants and acted as such at the hearing before the Board, and on the appeal to the court and the subsequent appeal to this court. The Board, after the hearing before it, approved a counsel fee of $5 for each claimant. After the hearing in this court the Board approved a fee of $10 (*i. e.,* $5 additional) for each claimant for services before the Board, in the lower court and in this court. Plaintiffs requested the Board to pay them "out of the checks and payments due each of the claimants," $10 as plaintiffs' counsel fee, but the Board refused to do so. Plaintiffs then made an "arrangement" with the Board whereby distribution of payments to claimants would be made in groups, at specified times and places, and plaintiffs would be notified thereof and permitted to be present and the Board would apprise each claimant of its approval of counsel fees, and "so make it feasible" for plaintiffs to collect their fees "from each claimant as he was being paid"; "pursuant to said arrangement" payments were made to about 150 claimants in the presence of plaintiffs, and plaintiffs were enabled then and there to collect their fees from "most of the claimants". "Without any just cause, reason or explanation" the Board "nullified, revoked and abrogated" the "arrangement" with plaintiffs and thereafter made payments to a number of claimants, without apprising them of its approval of the counsel fee and without giving plaintiffs "proper opportunity to effectively obtain such payment", and thus deprived plaintiffs of the opportunity to collect the counsel fee approved by the Board. The Board has refused and continues to refuse all "alternative proposals" by plaintiffs which would effectively enable them to collect their fees, and has made and is continuing to make further payments to claimants without adhering to the "original agreement" with plaintiffs. As a consequence, plaintiffs are unable to collect their fees and are and

will be deprived of their lawful compensation without any adequate remedy at law.

The bill prays (1) an injunction *pendente lite* against any further payments by the Board to claimants who have not paid the counsel fee approved by the Board, (2) that the Board be ordered to deduct $10 from the payments due each claimant who has not yet paid the counsel fee, and pay it over to plaintiffs as their fee, (3) a declaratory decree that plaintiffs are entitled to have the fee approved by the Board paid to them out of the benefit payments due or to become due to each claimant, (4) in the alternative, that the Board "be ordered to carry out and perform the original agreement and arrangement" between it and plaintiffs, and (5) general relief.

Throughout the allegations and prayers of the bill the fee approved by the Board is referred to as "awarded" by the Board or an "award" by the Board. The supporting exhibits show that the Board only approved fees and did not attempt to "award" them. Under the Unemployment Compensation Law the Board has no power to "award" fees but only to approve the amount of them.

Section 9(c) of the act provides: "(c) (Withdrawals.) Moneys shall be requisitioned from this State's account in the unemployment trust fund solely for the payment of benefits and for the payment of refunds pursuant to Sections 14 (b) and 19(g) (7) (B) and in accordance with regulations prescribed by the Board * * *." Section 15(b) and (c) provide: "(b) (Limitation of Fees.) * * * Any individual claiming benefits in any proceeding before a special examiner, referee or the Board may be represented by counsel or other duly authorized agent; but no such agent, other than an attorney-at-law, shall either charge or accept for such services any remuneration whatever; and no such counsel shall either charge or receive for such services more than an amount approved by the Board. * * * (c) (No Assignment of Benefits; Exemptions.) No assignment, pledge, or encumbrances of any right to benefits which are or may

become due or payable under this Article shall be valid; and such rights to benefits shall be exempt from levy, execution, attachment, or any other remedy whatsoever provided for the collection of debt; and benefits received by any individual, so long as they are not mingled with other funds of the recipient, shall be exempted from any remedy whatsoever for the collection of all debts. No waiver of any exemption provided for in this sub-section shall be valid." 1947 Supplement, Art. 95A, secs. 9(c), 15(b, c).

In the bill and in plaintiffs' brief the principal relief asked, and the relief stressed, is payment by the Board of plaintiffs' fees out of the benefits payable to their clients. At the argument the claim for this relief was practically abandoned. Such relief is not authorized by section 15(b) and is forbidden by sections 9(c) and 15(c). Without an assignment or an execution, and against the prohibition of assignment and the exemption from execution, plaintiffs claim the equivalent of assignment and execution. Nothing in the act makes a counsel fee a lien on benefits or empowers the Board to make it a lien or to collect it or help counsel to collect it out of benefits. Section 15(b) is not a provision for collection of fees for the benefit of lawyers but a limitation upon the amount of fees for the benefit of claimants. In this respect section 15(b) is in contrast with section 58 of the workmen's compensation act, which requires approval of fees by the commission but makes them, when approved, a lien upon the compensation awarded. Art. 101, sec. 58. Lawyers who accept employment do so subject to the provisions of the act. *Calhoun v. Massie*, 253 U. S. 170, 40 S. Ct. 474, 64 L. Ed. 843; *Yeiser v. Dysart*, 267 U. S. 540, 45 S. Ct. 399, 69 L. Ed. 775; *Margolin v. United States*, 269 U. S. 93, 46 S. Ct. 64, 70 L. Ed. 176.

At the argument plaintiffs, apparently recognizing that their claim for collection of fees out of benefits is untenable, pressed their "alternative" prayer for relief by requiring the Board to carry out its "original arrangement" with plaintiffs. They invoke the Board's "duty to

administer the Act" and its power to adopt—or rescind— "rules and regulations  *  *  *  to that end."  Art. 95A, sec. 11(a).  They assert a duty—and an arbitrary refusal—to make a general or special rule or order to help plaintiffs collect their fees.  As the act does not empower the Board to collect, or enforce collection of, counsel fees, the "duty to administer the act" manifestly does not include a duty to try to do indirectly what it has no power to do directly.  We express no opinion whether the Board in its discretion could lawfully carry out an "arrangement" for payment of benefits in the presence of counsel.  If it could, it cannot be compelled to make or carry out such an "arrangement".  If it has such discretion, it has discretion to do or not to do so.

Plaintiffs say that "any rule which will increase the incentive of attorneys to assist claimants with the difficult and intricate problems arising under the Act, in the face of severely destructive and grudgingly administered provisions for compensation, will aid in the ultimate end of the statute, while any interpretation which would discourage attorneys from lending their time, effort and skill to those seeking benefits in contested cases would oftentimes result in the defeat and nullification of the express purpose and intent of this legislation".  This argument should be addressed to the legislature, not to the courts.  As the argument recognizes, the act reflects a different philosophy.

> *Order reversed, with costs, and bill dismissed.*